|  |  |
|---|---|
|  | IN THE CIRCUIT COURT OF THE TENTH JUDICIAL CIRCUIT, IN AND FOR POLK COUNTY, FLORIDA |
| BRENDA ALVAREZ, | CASE NO.: 19-CA- |
| Plaintiff, | FLA BAR NO.: 0739685 |
| v. |  |
| LAKELAND AREA MASS TRANSIT DISTRICT, |  |
| Defendant. _____/ |  |

## COMPLAINT

Plaintiff, BRENDA ALVAREZ, hereby sues Defendant, LAKELAND AREA MASS TRANSIT DISTRICT, and alleges:

### NATURE OF THE ACTION

1. This is an action brought under Chapter 760, Florida Statutes, 42 U.S.C. §2000e et seq., 29 U.S.C. §621 et seq. and Family and Medical Leave Act (FMLA) of 1993, 29 U.S.C. §§2612, 2624.

2. This action involves claims which are, individually, in excess of Fifteen Thousand Dollars ($15,000.00), exclusive of costs and interest.

### PARTIES

3. At all times pertinent hereto, Plaintiff, BRENDA ALVAREZ, has been a resident of the State of Florida and was employed by Defendant. Plaintiff is a member of protected classes due to her gender (female), her age (over 40), and because she reported Defendant's unlawful employment activities and was subject to retaliation thereafter.

4. At all times pertinent hereto, Defendant, LAKELAND AREA MASS TRANSIT DISTRICT, has been organized and existing under the laws of the State of Florida. At all times pertinent to this action, Defendant has been an "employer" as that term is used under the applicable laws identified above. Defendant was Plaintiff's employer in connection with the claims set forth herein.

## CONDITIONS PRECEDENT

5. Plaintiff has satisfied all conditions precedent to bringing this action, if any.

## STATEMENT OF ULTIMATE FACTS

6. Plaintiff, a sixty-one (61) year old female, began her employment with Defendant on May 31, 2016, as a Senior Financial Reporting Analyst and held this position until her wrongful constructive termination on October 20, 2017.

7. Although Plaintiff had not received a performance evaluation for well in excess of one year, Plaintiff's sole performance evaluation rated her "satisfactory."

8. During her employment with Defendant, Plaintiff was subjected to a hostile work environment, disparate treatment, different terms and conditions of employment, and was held to a different standard because of her gender (female), her age (over 40) and because she reported Defendant's unlawful employment practices and was subject to retaliation thereafter.

9. The disparate treatment and retaliation came at the hands of specifically, but not limited to David Persaud, Defendant's CFO; Steven Schaible, Defendant's Human Resources Director; and Tom Phillips, Defendant's Executive Director.

10. At all times pertinent hereto, Plaintiff was supervised and reported to David Persaud (hereinafter "Persaud"), Defendant's CFO. While under his supervision, Persaud demeaned and ridiculed Plaintiff repeatedly and publicly in multiple staff meetings, and in the

presence of Plaintiff's professional colleagues. This demeaning treatment caused Plaintiff tremendous embarrassment and emotional distress. Persaud treated Plaintiff in this manner due to her gender and her age.

11. Persaud exercised his supervisory authority over Plaintiff to micro-manage, intimidate and bully Plaintiff. By way of example, Persaud often glared menacingly and excessively at Plaintiff when in proximity to her.

12. In addition, Persaud sent Plaintiff harassing email communications, and interfered with Plaintiff's work-related discussions with Tom Phillips (hereinafter "Phillips"), Defendant's Executive Director. Persaud did not treat male, or younger female, employees in the manner he treated Plaintiff.

13. By way of example, Persaud did not send Debbie Moore, (age 47) the same emails to intimidate her, continually check up on her and he did not embarrass or demean Moore during meetings.

14. As another example, Persaud did not send Daisy Mangarris, (age 45) demeaning and unpleasant emails. Persaud also granted Mangarris a raise after thirty (30) days, whereas Plaintiff did not receive a raise after one (1) entire year. Mangarris was often absent from work when she was first hired; however, Persaud had no concerns with her absences. In fact, she was compensated for the time off and had not met her probationary period. Conversely, when Plaintiff was absent for a period of one (1) day after working six months of perfect attendance, Persaud sent her a disrespectful email.

15. Elizabeth Roch, (age 37) was found knitting while sitting at her desk. However, Persaud failed to reprimand Roch. Roch has since been relocated to another office, but Persaud was aware that in her reassigned role, she continued to fail to perform her job duties.

16. Marci Harrison, (age 40-50) often came to the office and left as she pleased with little supervision or questions asked regarding her whereabouts. On several occasions, Plaintiff asked where Harrison was located and no one knew of her whereabouts.

17. Persaud also does not treat male employees in the same manner. By way of example, Rodney Wetzel, a male employee (age 50) was often out of the office for extended periods of time without Persaud questioning his whereabouts. When Plaintiff asked for Wetzel's assistance, Persaud would refuse to allow Wetzel to assist Plaintiff. Moreover, Wetzel's office was often dark and he was not present when needed.

18. On one occasion when Plaintiff asked Wetzel about a leave form when he took time off to care for his wife, Wetzel told Plaintiff that as a salaried employee, he did not have to complete a leave form; however, as a salaried employee, Plaintiff was required to complete a leave form for her absences.

19. Other male employees, including but not limited to Carmello LNU and another IT employee (ages 22-25), were behind schedule on their work tasks. However, Persaud never humiliated or bullied them in a staff meeting for failing to meet deadlines. John Satchell, another male employee (age 50), also enjoyed the privileges of never having faced humiliation at the hands of Persaud.

20. In July 2017, Plaintiff met with Phillips in his office and made a formal complaint. Plaintiff's complaint addressed the hostile work environment Plaintiff experienced due to Pursaud's gender-based and age-based animus, Persaud's inappropriate, improper, and illegal actions and work-place conduct.

21. The day after Plaintiff made the complaint to Phillips, Defendant's Human Resources Director, Steven Schaible ("hereinafter "Schaible") called Plaintiff to a meeting in his

office to discuss the specific concerns Plaintiff expressed to Phillips the previous day. During this meeting, Schaible questioned Plaintiff regarding the specifics of the complaint Plaintiff made to Phillips regarding Persaud's improper and illegal actions and conduct.

22. As a direct result, of Plaintiff's complaint to Phillips and Schiable, Persaud's hostile, improper and illegal conduct towards Plaintiff continued and intensified causing Plaintiff to suffer severe anxiety and emotional distress. Plaintiff believes Persaud's amplified post-Complaint hostile conduct towards her was in retaliation for Plaintiff's complaint and was intended to bring about Plaintiff's resignation.

23. When Persaud failed to secure Plaintiff's resignation through his hostilities, Persaud simply excluded Plaintiff from staff and grant meetings, thereby interfering with Plaintiff's ability to competently and successfully perform the essential duties and functions of her employment.

24. Persaud further retaliated against Plaintiff for her complaint, by assigning another employee to interrogate Plaintiff with respect to grant related billing and invoices over an extended fifteen (15) month period, an exercise designed to harass and intimidate Plaintiff. As previously stated, Persaud did not treat male, or younger female, employees in this manner.

25. In addition, Schaible, failed to conduct a proper investigation into Plaintiff's complaint, including allegations of Defendant's hostile work environment, gender-based disparate treatment, age-based disparate treatment, and grant accounting irregularities. Furthermore, the investigation of Plaintiff's complaint by Marci Harrison, Defendant's Internal EEOC Investigator, was not conducted properly after Harrison was appointed by Schaible to complete the investigation of Plaintiff's complaint. Harrison lacked independence as she was supervised and reported to Schaible at all times.

2019CA-000173-0000-00       Received in Polk 01/15/2019 11:44 PM

26. After Schaible and Harrison's failed investigation, Schaiable directed negative performance write-up of Plaintiff's job performance. Prior to this time, Plaintiff had no negative or derogatory personnel actions in her employment file.

27. Plaintiff suffered additional retaliation for her complaint when she was denied a promised pay increase. Prior to making her complaint, Plaintiff was promised a pay increase by Phillips, however in retaliation for making the complaint, Plaintiff never received the promised pay increase.

28. Plaintiff's health suffered as the direct result of the hostile work environment, discriminatory conduct, and retaliatory actions taken by Persaud, Schaible and Phillips. In further retaliation against Plaintiff for filing the complaint, Persaud required Plaintiff to submit leave requests for physician and other health care related appointments. As previously stated, Plaintiff was the only salaried employee required to submit leave requests for these type appointments.

29. On or about September 18, 2018, Plaintiff submitted documentation for the second time notifying Schaible that Plaintiff filed for FMLA benefits. Plaintiff previously requested FMLA and provided notice and documentation to Schaible, however, upon information and belief, Schaible denied receiving Plaintiff's first set of FMLA documentation.

30. On or about October 13, 2017, Plaintiff received a response from Schaible regarding her request for FMLA. In his response, Schaible threatened to terminate Plaintiff if she failed to provide additional documentation regarding her FMLA request by October 20, 2017.

31. Plaintiff could no longer endure the hostile work environment, the stress and the discriminatory treatment and had no other alternative but to quit. Essentially, Schaible retaliated

2019CA-000173-0000-00    Received in Polk 01/15/2019 11:44 PM

against Plaintiff for her Complaint and discriminated against her based on her gender and age, and by constructively terminating her employment on October 20, 2017.

32. After Defendant constructively terminated Plaintiff, Defendant hired Sholpan Grover, a much younger, 41 to 42 year old female as her replacement.

33. Plaintiff has retained the undersigned to represent her interests in this cause and is obligated to pay a fee for these services. Defendant should be made to pay said fee under the laws referenced above.

## COUNT I
## GENDER-BASED DISCRIMINATION

34. Paragraphs 1 through 33 above are re-alleged and incorporated herein by reference.

35. This count sets forth a claim for gender-discrimination brought under Chapter 760, Florida Statutes and 42 U.S.C. §2000e et seq..

36. Plaintiff has been the victim of discrimination on the basis of her gender in that Plaintiff was treated differently than similarly situated male employees of Defendant on the basis, at least in part, of her gender.

37. Defendant is liable for the differential treatment of and hostility toward Plaintiff because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

38. Furthermore, Defendant knowingly condoned and/or ratified the differential treatment of Plaintiff as more fully set forth above because it allowed the differential treatment and participated in same.

7

39. Defendant's known allowance and/or ratification of these actions and inactions actions created, perpetuated and facilitated an abusive and offensive work environment within the meaning of the statute or statutes referenced above.

40. In essence, the actions of agents of Defendant, which were each condoned and/or ratified by Defendant, were of a gender-based nature and in violation of the laws set forth herein.

41. The discrimination complained of herein affected terms, conditions, and privileges of Plaintiff's continued employment by Defendant. The events set forth herein led, at least in part, to Plaintiff's termination/constructive termination.

42. Defendant's acts and omissions constituted intentional discrimination and unlawful employment practices based upon gender in violation of Chapter 760, Florida Statutes.

43. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are occurring at present, and will likely continue into the future. Plaintiff is also entitled to equitable/injunctive relief under this count.

## COUNT II
## AGE-BASED DISCRIMINATION

44. Paragraphs 1 through 33 are re-alleged and incorporated herein by reference.

45. This is an action against Defendant for discrimination based upon age brought under Chapter 760, Florida Statutes and 29 U.S.C. §621 et seq..

46. Plaintiff has been the victim of discrimination on the basis of her age in that she was treated differently than similarly situated younger employees of Defendant and has been subject to hostility and poor treatment on the basis, at least in part, of her age.

8

47. Defendant is liable for the differential treatment of and hostility toward Plaintiff because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

48. Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiff as more fully set forth above because it allowed the differential treatment and participated in the same.

49. Defendant's known allowance and ratification of these actions and inactions created, perpetuated and facilitated an abusive and offensive work environment within the meaning of the statutes referenced above.

50. In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of an age-based nature and in violation of the laws set forth herein.

33. The discrimination complained of herein affected terms, conditions, and privileges of Plaintiff's continued employment with Defendant, and led to her termination/constructive discharge.

34. Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon age in violation of Chapter 760, Florida Statutes.

35. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive relief under Chapter 760, Florida Statutes.

2019CA-000173-0000-00    Received in Polk 01/15/2019 11:44 PM

## COUNT III
## RETALIATION

51. Paragraphs 1 through 33 above are re-alleged and incorporated herein by reference.

52. Defendant is an employer as that term is used under the applicable statutes referenced above.

53. The foregoing allegations establish a cause of action for unlawful retaliation after Plaintiff reported or opposed unlawful employment practices adversely affecting Plaintiff under Chapter 760, Florida Statutes, and other statutory provisions cited herein.

54. The foregoing unlawful actions by Defendant were purposeful.

55. Plaintiff voiced opposition to unlawful employment practices during her employment by Defendant and was the victim of retaliation thereafter, as related in part above, and then she was reprimanded and terminated.

56. Plaintiff is a member of a protected class because she reported unlawful employment practices and was the victim of retaliation thereafter. There is a causal connection between her reporting of the unlawful employment practices and the adverse employment actions taken against her thereafter.

57. As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, loss of capacity for the enjoyment of life, and other tangible and intangible damages. These damages have occurred in the past, are occurring at present, and will likely continue into the future. Plaintiff is also entitled to equitable/injunctive relief and to punitive damages under this count.

2019CA-000173-0000-00    Received in Polk 01/15/2019 11:44 PM

## COUNT IV
## VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

58. Paragraphs 1-33 are re-alleged and are incorporated herein by reference.

59. This is an action against Defendant for harassing Plaintiff due to using leave time, and for terminating Plaintiff for taking time off that was authorized by and protected under the FMLA. This is thus both an interference and retaliation claim.

60. After requesting and trying to take leave for serious health conditions, Defendant harassed Plaintiff and took adverse personnel actions against her.

61. Plaintiff was denied rights and benefits conferred by the FMLA and was constructively terminated after requesting but being denied protected leave.

62. Defendant's violations of the FMLA were willful.

63. As a direct and proximate result of Defendant's willful, wanton, and malicious acts described in part above, Plaintiff has sustained damages for the loss of employment, as well as the security and peace of mind it provided. Plaintiff has incurred damages for lost wages, and other damages attendant with the loss of her job. These damages have occurred in the past, are occurring at present and will continue in the future. Plaintiff is entitled to injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

(a) that process issue and this court take jurisdiction over this case;

(b) that this court enter judgment against Defendant and for Plaintiff awarding equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

11

(c) that this court enter judgment against Defendant and for Plaintiff awarding all legally-available general and compensatory damages, including damages for economic loss, to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d) that this court enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

(e) that this court enter judgment against Defendant and for Plaintiff awarding Plaintiff costs and attorney's fees as allowed by law;

(f) that this court enter judgment against Defendant and for Plaintiff awarding Plaintiff interest where appropriate; and

(g) that this court grant such other and further relief as is just and proper under the circumstances.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

DATED this 15th day of January, 2019.

Respectfully submitted:

/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P. A.
310 East Bradford Road
Tallahassee, FL 32303
Telephone: (850) 383-4800
Facsimile: (850) 383-4801
Email: marie@mattoxlaw.com
Secondary emails:
michelle2@mattoxlaw.com
marlene@mattoxlaw.com
ATTORNEYS FOR PLAINTIFF