UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRENDA ALVAREZ,

    Plaintiff,
v.                              Case No. 8:19-cv-1044-T-33SPF

LAKELAND AREA MASS TRANSIT
DISTRICT,

    Defendant.
_____/

**ORDER**

This matter is before the Court on consideration of Defendant Lakeland Area Mass Transit District's Motion to Dismiss the Second Amended Complaint (Doc. # 30), filed on July 25, 2019. Plaintiff Brenda Alvarez filed a response in opposition on August 21, 2019. (Doc. # 35). For the reasons that follow, the Motion is denied.

**I.    Background**

Alvarez worked for the District as a senior financial reporting analyst from May 31, 2016, to October 20, 2017. (Doc. # 29 at 2). She "is a member of protected classes due to her gender (female), her age (over 40), and because she reported [the District's] unlawful employment activities and was subject to retaliation thereafter." (Id. at 1). Alvarez insists she was a satisfactory employee. (Id. at 2). Alvarez

1

alleges that "[t]he disparate treatment and retaliation came at the hands of specifically, but not limited to, David Persaud, [the District's] chief financial officer ('CFO'); Steven Schaible, [the District's] human resources ('HR') director; and Tom Phillips, [the District's] executive director." (Id.).

Persaud — Alvarez's supervisor — "demeaned and ridiculed [her] repeatedly and publicly in multiple staff meetings, and in the presence of [her] professional colleagues," allegedly because of Alvarez's gender and age. (Id.). Persaud "micro-manage[d], intimidate[d] and bull[ied]" Alvarez; for example, he "glared menacingly and excessively at [Alvarez] when in proximity to her." (Id. at 3). He also "sent [Alvarez] harassing email communications and interfered with [her] work-related discussions with others in the workplace." (Id.). The Complaint also alleges that Persaud treated various male or younger female employees better than he treated Alvarez, even when those other employees did not perform satisfactorily. (Id. at 3-5).

So, in July 2017, Alvarez made a formal complaint to Phillips in which she "addressed the targeted mistreatment Plaintiff experienced due to Persaud's gender-based and age-based animus, and to Persaud's inappropriate, improper, and

2

illegal actions and work-place conduct." (Id. at 5). The next day, Alvarez met with Schaible — the HR director — to discuss her formal complaint against Persaud. (Id.).

But "Persaud's hostile, improper and illegal conduct toward [Alvarez] continued and intensified, causing [her] to suffer severe anxiety and emotional distress." (Id.). Alvarez believes "Persaud's amplified post-complaint hostile conduct toward [her] was in retaliation for [her] complaint and was intended to force [her] to resign." (Id.). When Alvarez did not resign, "Persaud simply excluded [her] from staff and grant meetings, thereby interfering with [Alvarez's] ability to competently and successfully perform the essential duties and functions of her position," and committed other allegedly retaliatory conduct. (Id.).

Additionally, according to the Second Amended Complaint, the District's human resources department and internal equal employment investigator failed to properly investigate Alvarez's formal complaint against Persaud. (Id. at 6). Schaiable then "directed negative written evaluations of [Alvarez's] job performance." (Id.). Alvarez was also "denied a promised increase in compensation," allegedly "in retaliation for making the complaints." (Id.).

3

Alvarez's health began to suffer as a result of the discriminatory and retaliatory actions she faced. (Id.). She was required "to submit leave requests for physician and other health care related appointments." (Id.). Alvarez "was the only salaried employee required to submit leave requests for these type [of] appointments." (Id.).

In September 2017, Alvarez "submitted documentation for the second time notifying Schaible that she was filing for Family and Medical Leave Act (FMLA) benefits." (Id. at 7). Alvarez "had already requested FMLA leave and provided notice and documentation to Schaible; however, upon information and belief, Schaible denied receiving the submission of Plaintiff's first set of FMLA documentation." (Id.). Schaible later contacted Alvarez on October 13, 2017, "threaten[ing] to terminate [her] if she failed to provide additional documentation regarding her FMLA request by October 20, 2017." (Id.). But Alvarez had already "submitted all of the documents she was provided to submit which were supported by the proper signatures and information." (Id.).

Because of Schaible's demand for further paperwork, Alvarez quit, which she claims was a constructive termination. (Id.). According to her, "[n]o reasonable person would have remained in that work environment under these

4

circumstances." (Id.). Alvarez's replacement was a 41-year-old woman. (Id.).

Alvarez initiated this action in state court on January 15, 2019. (Doc. # 4-1). The District removed the case to this Court on April 30, 2019. (Doc. # 4). When the District moved to dismiss the Complaint (Doc. # 6), Alvarez filed an Amended Complaint. (Doc. # 16). Then, the District moved to dismiss the Amended Complaint, (Doc. # 21), and the Court dismissed the Amended Complaint as a shotgun complaint on July 3, 2019. (Doc. # 28).

With the Court's leave, Alvarez filed the Second Amended Complaint on July 11, 2019. (Doc. # 29). The Second Amended Complaint contains twelve counts: Count I for "Gender-Based Disparate Treatment" under Title VII; Count II for "Gender-Based Disparate Treatment" under Florida's Civil Rights Act (FCRA); Count III for "Age-Based Disparate Treatment" under the Age Discrimination in Employment Act (ADEA); Count IV for "Age-Based Disparate Treatment" under the FCRA; Count V for "Constructive Discharge" under Title VII; Count VI for "Constructive Discharge" under the ADEA; Count VII for "Constructive Discharge" under the FCRA; Count VIII for "Retaliation" under Title VII; Count IX for "Retaliation" under the ADEA; Count X for "Retaliation" under the FCRA;

Count XI for "FMLA Interference"; and Count XII for "FMLA Retaliation." (Id.).

The District now moves to dismiss the Second Amended Complaint. (Doc. # 30). Alvarez has responded (Doc. # 35), and the Motion is ripe for review.

II. **Legal Standard**

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). "The scope of review

must be limited to the four corners of the complaint" and attached exhibits. St. George v. Pinellas Cty., 285 F.3d 1334, 1337 (11th Cir. 2002).

**III. Analysis**

The District seeks dismissal on the grounds that the Second Amended Complaint fails to satisfy minimum pleading standards and fails to state plausible claims for relief under the various statutes. (Doc. # 30).

**A.   Minimum Pleading Standards**

The District contends that the Second Amended Complaint still fails to satisfy the minimum pleading standards set by Federal Rules of Civil Procedure 8 and 10 and is a shotgun complaint. (Id. at 4).

The Court disagrees. The Second Amended Complaint is not a shotgun complaint. It does not combine claims under different statutes into the same count. To the extent the District insists that certain counts commingle two different theories of discrimination (discrimination by tangible employment action and hostile work environment), such commingling does not render the Second Amended Complaint a shotgun complaint.

True, the Court suggested to Alvarez in its Order dismissing the Amended Complaint that it would be easier to

7

understand her claims if she separated gender discrimination and hostile work environment claims into separate counts. (Doc. # 28 at 9). But the Court never held that such separation was required. Furthermore, in her response, Alvarez clarifies that she is not bringing a claim for hostile work environment under any statute. (Doc. # 35 at 5-6, 18). Therefore, no separate counts for hostile work environment were required.

Nor does the Second Amended Complaint violate other pleading standards set by Rules 8 and 10. The Second Amended Complaint satisfies Rule 8, even if the separate counts do not recite "the requisite elements of each cause of action with an application of the facts thereto" as the District alleges. (Doc. # 30 at 4); see Fed. R. Civ. P. 8(a)(2)(requiring only "a short and plain statement of the claim showing that the pleader is entitled to relief"). And the allegations are laid out in numbered paragraphs with claims under different statutes asserted in separate counts — thus satisfying Rule 10. See Fed. R. Civ. P. 10(b).

Thus, the Court declines to dismiss the Second Amended Complaint based on the minimum pleading standards.

**B.   The Merits**

Next, the District argues that all claims fail to state plausible claims for relief. (Doc. # 30 at 7-21). Specifically, the District argues that Alvarez's claims for (1) gender discrimination under Title VII and the FCRA, (2) age discrimination under the ADEA and the FCRA, (3) the constructive discharge claims under Title VII, the ADEA, and the FCRA, (4) the retaliation claims under Title VII, the ADEA, and the FCRA, and (5) the FMLA interference and retaliation claims fail. The Court will address these claims separately.

**1.   Gender Discrimination**

Regarding Counts I and II, the District argues Alvarez has not sufficiently pled "any adverse employment action taken with respect to her sex." (Doc. # 30 at 8). Additionally, the District insists Alvarez's allegations about comparators "are conclusory in nature and devoid of the necessary factual enhancement needed." (Id. at 10).

In response, Alvarez argues that she has alleged adverse employment actions based on her gender. (Doc. # 35 at 7). In addition to the conduct specifically identified as the result of gender discrimination — humiliation in meetings, micro-management, harassing emails, and forcing her to submit leave

9

forms (Doc. # 29 at 2-4) — Alvarez insists the Court should consider the allegations that she was denied a promised raise and received negative performance evaluations. (Doc. # 35 at 7). She contends that these actions were taken with both discriminatory and retaliatory intent. (Id.).

An "adverse employment action" is "a decision of the employer [that] 'impact[s] the terms, conditions, or privileges of [her] job in a real and demonstrable way.'" Jefferson v. Sewon Am., Inc., 891 F.3d 911, 920-21 (11th Cir. 2018)(citation omitted). "This 'impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment.'" Id. at 921. "The 'employee must show a **serious and material** change in the terms, conditions, or privileges of employment' so that a 'reasonable person in the circumstances' would find 'the employment action [to] be materially adverse.'" Id.

Alvarez has sufficiently pled at least one adverse employment action — the denial of a promised raise. (Doc. # 29 at 6); see Gillis v. Ga. Dep't of Corr., 400 F.3d 883, 888 (11th Cir. 2005)("We hold that an evaluation that directly disentitles an employee to a raise of any significance is an adverse employment action under Title VII. We note that this case does not involve disentitlement to a de minimis raise;

10

rather, the denial of the raise at issue here was an employment decision that significantly affected Gillis's compensation."); see also Barricks v. Eli Lilly & Co., 481 F.3d 556, 559 (7th Cir. 2007)("[T]he denial of a raise — as opposed to missing out on something more transient, like a bonus — qualifies as an adverse employment action."). True, the Second Amended Complaint states that Alvarez was given negative performance reviews and denied a raise "in retaliation" for Alvarez complaining to HR. (Doc. # 29 at 5-6). Nevertheless, the Court reads these allegations in the light most favorable to Alvarez and finds that these alleged adverse employment actions were intended to apply to both the sex and age discrimination claims and the retaliation claims.

Because at least one alleged action is an adverse employment action, the Court need not decide whether the other discriminatory conduct rises to the level of an adverse employment action at this juncture.

Regarding comparators, Alvarez has identified four male comparators she alleges were treated better than her. (Doc. # 29 at 4-5, 8). The District's arguments about whether the alleged comparators were truly similarly situated to Alvarez are better addressed at the summary judgment stage. Determining whether a plaintiff and comparator are "similarly

situated in all material respects" is a fact-intensive inquiry better suited to summary judgment. See Lewis v. City of Union City, Ga., 918 F.3d 1213, 1218 (11th Cir. 2019)(reviewing a summary judgment decision and stating "that a meaningful comparator analysis must be conducted at the prima facie stage of McDonnell Douglas's burden-shifting framework" and that the proper standard for proffered comparators is whether they are "similarly situated in all material respects").

Furthermore, the Court notes that comparator evidence is not the only means of establishing discrimination under Eleventh Circuit precedent. See Kent v. City of Birmingham, No. 2:18-CV-00734-JHE, 2019 WL 1505413, at *3 (N.D. Ala. Apr. 5, 2019)(denying motion to dismiss and stating that the defendant's "argument that [the plaintiff] must name a similarly-situated comparator outside his protected class does not doom his claim because . . . in some circumstances, a plaintiff can establish a prima facie Title VII case for disparate treatment without showing the existence of a comparator"); see also Rioux v. City of Atlanta, 520 F.3d 1269, 1281 (11th Cir. 2008)(holding that the plaintiff established a prima facie case of racial discrimination when he did not present evidence of a comparator but presented

12

other circumstantial evidence that was sufficient). Thus, even if Alvarez's allegations regarding comparators were insufficient, that would not justify dismissal of these claims.

Finally, as mentioned above, Alvarez states in her response that she is not bringing these — or any — claims under the hostile work environment theory. (Doc. # 35 at 5-6, 18). Thus, the District's arguments regarding hostile work environment are unnecessary.

The Motion is denied as to Counts I and II.

### 2. **Age Discrimination**

As with the sex discrimination claims, the District argues that "none of the alleged employment actions taken with respect to Plaintiff allegedly premised on her age are adverse employment actions as a matter of law" and thus cannot support Alvarez's claims of age discrimination, Counts III and IV. (Doc. # 30 at 16). The District also maintains that Alvarez's allegations regarding comparators are again insufficient. (Id.).

The Court rejects these arguments for the same reasons discussed for the sex discrimination claims. At the pleading stage, Alvarez has sufficiently alleged at least one adverse employment action and Alvarez's allegations about comparators

13

do not justify dismissal. The Motion is denied as to Counts III and IV.

### 3. **Constructive Discharge**

The District contends that the three constructive discharge claims, Counts V-VII, fail to state plausible claims for relief. (Doc. # 30 at 17).

"A constructive discharge occurs when a discriminatory employer imposes working conditions that are 'so intolerable that a reasonable person in [the employee's] position would have been compelled to resign.'" Fitz v. Pugmire Lincoln-Mercury, Inc., 348 F.3d 974, 977 (11th Cir. 2003)(citation omitted). This is a high standard and "[o]ne's working environment does not become objectively intolerable simply because it becomes less attractive." Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1231-1235 (11th Cir. 2001); see also Bryant v. Jones, 575 F.3d 1281, 1298 (11th Cir. 2009)("Establishing a constructive discharge claim is a more onerous task than establishing a hostile work environment claim.").

In its Motion, the District cited this legal standard for constructive discharge claims. (Doc. # 30 at 17-18). However, the District cited no authority decided at the motion to dismiss stage to support its contention that Alvarez's

allegations fall short of stating a claim. Thus, the District has not convinced the Court that Alvarez's allegations are insufficient at the motion to dismiss stage. See Herbert v. Architect of Capitol, 839 F. Supp. 2d 284, 298 (D.D.C. 2012)("[T]he [defendant] has simply failed to support its argument with any meaningful measure of factual or legal argument. Courts need not consider cursory arguments of this kind, and the Court declines to do so here.").

Taking all allegations in the light most favorable to Alvarez, the Second Amended Complaint pleads plausible claims for constructive discharge under Title VII, the ADEA, and the FCRA. Alvarez has clearly alleged that the conditions she faced, which included micro-management, harassing emails, glaring, humiliation in front of coworkers, exclusion from meetings, a negative performance review, and denial of a promised raise, among other things, were intolerable. (Doc. # 29 at 2-6). She specifically alleges that "[n]o reasonable person would have remained in that work environment under these circumstances." (Id. at 7). Thus, the Motion is denied as to Counts V-VII. The District may reassert its arguments at the summary judgment stage.

### 4. <u>Retaliation</u>

Next, the District argues Alvarez has not pled plausible claims for retaliation under Title VII, the ADEA, and the FCRA. (Doc. # 30 at 19). However, the District fails to cite any legal authority in its argument for dismissal of these claims. Furthermore, the District's argument for dismissal is primarily that Alvarez has failed to specify whether she is proceeding on these claims under a hostile work environment theory or otherwise. (<u>Id.</u>).

But, again, Alvarez has clarified that she is not bringing any claims under a hostile work environment theory. (Doc. # 28 at 5-6, 18). The District's concern over this issue is thus moot. And upon review of the Second Amended Complaint, the Court finds that Alvarez has sufficiently pled her claims for retaliation. Thus, the District's Motion is denied as to the retaliation claims.

### 5. <u>FMLA Interference and Retaliation</u>

Regarding the FMLA interference claim, Count XI, the District contends — without citation to any authority — that Alvarez "simply makes conclusory statements that [she] was denied rights and benefits conferred by FMLA and that [she] was harassed after asking for FMLA leave, however, there are no pled facts that establish any of these allegations." (Doc.

# 30 at 20). The District emphasizes that Alvarez did take FMLA leave and that, besides the District's request for additional paperwork while Alvarez was on leave, there are "no factual allegations that [she] was ever prevented from taking leave or denied any rights or benefits or that establish any sort of interference with her FMLA rights." (Id.). Again, the Court is not persuaded by the District's unsupported argument. See Herbert, 839 F. Supp. 2d at 298 ("[T]he [defendant] has simply failed to support its argument with any meaningful measure of factual or legal argument. Courts need not consider cursory arguments of this kind, and the Court declines to do so here.").

Regardless, the Court finds that Alvarez has sufficiently stated an FMLA interference claim at the motion to dismiss stage. "An interference claim occurs when an employer interferes with, restrains, or denies the exercise or attempted exercise of FMLA rights or benefits." Hogancamp v. Cty. of Volusia, 316 F. Supp. 3d 1354, 1358 (M.D. Fla. 2018)(citing 29 U.S.C. § 2615(a)(1)). Alvarez alleges that Schaible denied receiving Alvarez's first set of FMLA documentation, which required Alvarez to submit a second set of FMLA documentation to support her leave request in September 2017. (Doc. # 28 at 7). The allegation regarding

the first set of documentation supports the inference that Schaible had received the first set of documentation but deliberately ignored it in order to make it more difficult for Alvarez to obtain FMLA leave. Furthermore, Alvarez's allegation that Schaible demanded Alvarez provide further paperwork regarding her FMLA request in October of 2017 is significant. Alvarez states that she "had submitted all of the documents she was provided to submit which were supported by the proper signatures and information" before Schaible demanded more paperwork. (Id.). Taking these allegations in the light most favorable to Alvarez, it's plausible that no further documentation was truly necessary, but Schaible demanded it while threatening to terminate Alvarez in order to interfere with her FMLA leave. Thus, at the pleading stage, Alvarez's allegations are enough to state a plausible claim for FMLA interference.

Finally, concerning the FMLA retaliation claim, the District argues this claim is insufficiently pled because Alvarez "simply makes conclusory statements that Plaintiff was harassed and that adverse personnel actions were taken against her after she made a request for FMLA leave." (Doc. # 30 at 20). According to the District, the allegations of the Second Amended Complaint are "inconsistent" because

18

> while [Alvarez] makes the conclusory allegations that she was subject to an adverse personnel action and harassed after requesting leave, [her] pled facts establish that she was out on leave and that the only contact she alleged she had with [the District] after [she] requested FMLA leave was a request from [the District] to provide additional FMLA paperwork.

(Id. at 20-21).

But, again, the allegation that Schaible demanded further paperwork from Alvarez after she had properly submitted all documentation she was told was necessary supports the plausible reading that this additional paperwork was intended to retaliate against Alvarez for taking FMLA leave. Taking all the allegations in the light most favorable to Alvarez, the Second Amended Complaint states a claim for FMLA retaliation.

The District's Motion is denied as to the FMLA interference and FMLA retaliation claims, Counts XI and XII.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant Lakeland Area Mass Transit District's Motion to Dismiss the Second Amended Complaint (Doc. # 30) is **DENIED.**

(2) The District's Answer to the Second Amended Complaint is due 14 days from the date of this Order.

19

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 30th day of August, 2019.

<u>/s/ Virginia M. Hernandez Covington</u>
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE